IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEREMY T. GREENE,

                Plaintiff,              OPINION AND ORDER

v.

                                  20-cv-119-wmc

KEVIN A. CARR, CINDY O'DONNELL,
BRAD HOMPE, BRIAN FOSTER, CAPT. TRITT,
MS. KROLL, T. MOON, BRETT HELMER,
NEVIN WEBSTER, CATHERINE BROADBENT,
NANCY SALMON, and WISCONSIN DEPARTMENT OF CORRECTIONS,[1]

                Defendants.

*Pro se* plaintiff Jeremy T. Green, a prisoner at Waupun Correctional Institution ("WCI"), claims pursuant to 28 U.S.C. § 1983 that defendants violated his constitutional rights and his rights under the Americans with Disabilities Act by denying him access to: (1) documents he allegedly needs to pursue various legal actions in state and federal court; and (2) a pen insert, typewriter or Microsoft Word. Greene also seeks related preliminary injunctive relief.[2] (Dkt. #6.) Having reviewed Greene's complaint for purposes of screening under 28 U.S.C. § 1915A, the court concludes that Greene's allegations fail to state a claim upon which relief can be granted, but will give him an opportunity to amend his complaint as outlined below. Accordingly, the court will deny without prejudice Greene's motion for preliminary relief.

---

[1] Greene identifies Nevin Webster, Catherine Broadbent, and Nancy Salmon as defendants in his complaint (dkt. #13 at 2), but they are not named in the caption. The court nonetheless will amend the caption to add these defendants.

[2] Greene moves the court to consider his amended declaration in support of injunctive relief instead of his original declaration. (Dkt. #12.) The court will grant this motion without further comment.

ALLEGATIONS OF FACT[3]

Greene currently is incarcerated at WCI, where the events related to his claims have been occurring. He seeks leave to proceed against the Wisconsin Department of Corrections ("DOC") as well as DOC Secretary Kevin A. Carr, Deputy Secretary Cindy O'Donnell, and Corrections Complaint Examiner Brad Hompe. Greene would also proceed against certain WCI employees including Warden Brian Foster, Restrictive Housing Unit ("RHU") Security Supervisor Captain Tritt, RHU Program Assistant Ms. Kroll, Inmate Complaint Examiner T. Moon, Education Director Brett Helmer, Law Librarian Nevin Webster, and Records Supervisor Nancy Salmon. Finally, Greene names Cathy Broadbent, the law librarian at the Wisconsin Secure Program Facility ("WSPF").

A. Access to word processing documents

While incarcerated at WSPF before his March 2019 transfer to WCI, Greene used his DOC Education Network ("EdNet") account to access Microsoft Word and draft notes and legal documents containing "details/facts and law" relating to multiple ongoing cases, including a civil challenge to conditions of confinement, and state court motions for sentence credit and sentence modification.[4] (Dkt. #13 at 2.) Greene claims that he was transferred without notice and could not obtain updated copies of these documents beforehand. Several months after his transfer, on October 13, 2019, Greene sent

---

[3] For screening purposes, the court assumes the following facts based on the allegations in plaintiff's complaint and resolves all ambiguities and draws all reasonable inferences in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[4] In his motion for preliminary injunctive relief, Greene asserts that he is litigating two state court cases and three federal court cases. (Dkt. #14 at 3.)

2

defendant Nevin Webster an information request asking for copies of these documents, but Webster allegedly replied that she could not access them from WCI. Greene then wrote to defendant Brett Helmer, who allegedly indicated that WCI's technology "does not align with EdNet accessibility." (Dkt. #13 at 5.) Finding no relief through WCI staff, Greene contacted defendant Cathy Broadbent, the WSPF prison librarian, on October 21, 2019. Broadbent forwarded Greene's request to defendant Records Supervisor Nancy Salmon for review. In her response, Salmon explained that upon his transfer to WCI, Greene's WSPF "account [was] disabled and access is denied." (Dkt. #13 at 5.) Greene contends that EdNet accounts should not be disabled when a prisoner is transferred.

Greene filed inmate complaint WCI-2019-20593, which was reviewed by defendant T. Moon. Moon allegedly rejected Greene's complaint because Greene had not filed it within 14 days of his transfer. Greene alleges that he did not do so because transport officers told him that his transfer to WCI was only temporary. Greene appealed Moon's decision to defendant Warden Brian Foster, who affirmed the result.

B. Access to drafting tools

Approximately two months after his transfer to WCI, Greene sent defendant Foster an information request challenging the decision to allow RHU inmates only "rubber pencils" rather than the previously provided pen inserts. (Dkt. #13 at 2.) Greene told Foster that using the pencils caused him eye strain, made slower work of his document drafting, and that the pencils left fainter text that was difficult to scan or photocopy. Foster did not respond. Greene alleges that although he has since learned how to use the pencils

3

more effectively, the pressure required to produce legible print causes him pain in his hand, back and neck.

Before moving to the RHU at WCI, Greene had access to his personal typewriter and used it to draft and file a motion for sentence credit and a motion for sentence modification in Wisconsin circuit court. The circuit court denied Greene's motions on July 30, 2019, noting with respect to Greene's request for sentence modification that his factual basis was insufficient and that he had not identified a "new factor" justifying relief.[5] (Dkt. #2-1.) Greene appealed from that decision to the state appellate court, but then lost access to his typewriter. On November 7, 2019, Greene sent an information request to defendant RHU Security Supervisor Captain Tritt indicating that Green's state appellate brief was due on November 23 and asking for access to a typewriter or Microsoft Word to draft a brief in compliance with the form requirements of Wis. Stat. § 809.19(8)(b).[6] Defendant RHU Program Assistant Ms. Kroll replied that she would discuss Greene's request with the captain. Greene waited until November 20 before filing an extension motion with the Wisconsin Court of Appeals, which was granted. The court declined, however, Greene's request to order the DOC to provide him access to his typewriter and "other materials." (Dkt. #2-8.)

---

[5] *See State v. Harbor*, 2011 WI 28, ¶¶ 36-38, 333 Wis. 2d 53, 72-73, 797 N.W.2d 828, 838 (explaining the two-step inquiry Wisconsin courts use in deciding a motion for sentence modification).

[6] The statute requires briefs filed in the Wisconsin Court of Appeals to be "[p]roduced by a duplicating or copying process that produces a clear, black image of the original on white paper" and "using either a monospaced font or a proportional serif font." Wis. Stat. § 809.19(8)(b)(1).

On November 26, Kroll formally responded to Greene's information request that "typewriters were not allowed in RHU," but made no mention of Word. (Dkt. #13 at 10.) Greene wrote to Captain Tritt again, emphasizing that he could not file a statutorily compliant appellant's brief in state appellate court without access to a typewriter or Word. Again, Kroll responded that typewriters were not allowed, nor were storage disks, but that Greene could use the legal research materials and software in the "legal rec rooms." (Dkt. #13 at 11.) According to Greene, the RHU has three electronic institution law library computer stations as well as a computer in a windowed room accessible via mouse that all have Microsoft Word installed. However, the program's functionality is allegedly limited, and Greene claims that one computer does not have a keyboard, and that inmates cannot use a storage device such as a thumb drive or a CD to save their work.

Greene filed inmate compliant WCI-2019-21533 about the issue of inadequate drafting tools on December 5, 2019. Moon recommended dismissal because the pencils complied with DOC policy, none of Greene's court filings had been rejected as illegible, and Captain Tritt allowed RHU inmates with court deadlines the use of black crayon. Foster agreed with Moon's recommendation, and Greene appealed. Defendant Brad Hompe, a corrections complaint examiner, reviewed the appeal and recommended dismissal, stating that Greene could contact Captain Tritt "for a writing instrument accepted by the courts." (Dkt. #13 at 13.) Defendant Deputy Secretary Cindy O'Donnell dismissed Greene's appeal on January 23, 2020. This lawsuit followed. Greene seeks monetary damages as well as injunctive relief.

OPINION

I. Rule 8

Based on plaintiff's factual allegations as well as the several pages of legal authority and footnotes included at the end of the complaint (dkt. #13 at 16-33), the court understands plaintiff to be asserting violations of his statutory rights under Title II of the Americans with Disabilities Act ("ADA"), his constitutional right of meaningful access to the courts, and a class-of-one equal protection claim.[7] However, the court must dismiss his complaint because it does not satisfy the requirements of Federal Rule of Civil Procedure 8. Rule 8 requires "'short and plain statement of the claim' sufficient to notify the defendants of the allegations against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether the details in the complaint satisfy this standard, a district court should consider only factual

---

[7] If plaintiff disagrees with how the court has construed his claims, he can amend his complaint to clarify how he means to proceed. Plaintiff also alleges that defendants' conduct violates the Wisconsin Constitution (dkt. #13 at 33), but he may not proceed on these claims because the state constitution does not authorize suits for money damages except in the context of a takings claim. *W.H. Pugh Coal Co. v. State*, 157 Wis.2d 620, 634–35, 460 N.W.2d 787, 792–93 (1990); *Jackson v. Gerl*, No. 07–cv–656–bbc, 2008 WL 753919, at *6 (W.D. Wis. 2008). With respect to injunctive relief, sovereign immunity principles prohibit federal courts from enjoining state officials under state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). This limitation also applies to declaratory relief. *Benning v. Board of Regents of Regency Universities*, 928 F.2d 775, 778 (7th Cir. 1991).

allegations and disregard "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).

### A. ADA/Rehabilitation Act Claim

While plaintiff claims that the DOC, Warden Foster, and DOC Secretary Carr violated his rights under the ADA, the court will infer that he is also seeking leave to proceed on a claim under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (noting uncertainty as to whether ADA violations that do not implicate constitutional rights may be brought in federal court and suggesting district courts read in a Rehabilitation Act claim). Still, he will not be allowed to proceed under either act, at least as currently pled. The ADA, 42 U.S.C. §§ 12131-12134, prohibits discrimination against qualified persons with disabilities. To establish a violation of Title II of the ADA, a plaintiff "must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)). The Rehabilitation Act is substantially identical to the ADA; it provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A claim under § 504 of the Act has four elements: (1) an individual with a disability; (2) who was otherwise qualified to participate;

(3) but who was denied access solely by reason of disability; (4) in a program or activity receiving federal financial assistance. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

Plaintiff's allegations are insufficient to state a claim under either act. The complaint alleges that defendant Foster prohibited pen inserts in the RHU despite knowing that using a rubber pencil to draft legal documents causes plaintiff, who wears glasses, eye strain and pain from having to press harder to write legibly. Even assuming that plaintiff's impaired vision and pain constitute disabilities, it would be unreasonable to infer that he has been *denied* the benefit of a program, activity or service at WCI when plaintiff is apparently able to draft detailed, readable court documents with the pencil, as he has filed in this court.[8] (Dkt. ##12-15.) Moreover, being denied access to pen inserts and certain other drafting tools appears to be a function of being placed in the RHU, not "by reason of" a disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Finally, plaintiff alleges that black crayon is also available to RHU inmates with court deadlines, but adds no allegations indicating that this alternative drafting tool causes him the same physical problems as the pencil or is otherwise an insufficient accommodation. Plaintiff cannot proceed on this claim.

### B. Class-of-One Equal Protection Claim

Plaintiff's class-of-one equal protection claim is also a non-starter. Plaintiff alleges

---

[8] Although plaintiff's initial complaint and declaration in support of his motion for preliminary relief were faint, he was able to file more readable versions within ten days' notice. (Dkt. ##1, 2, 13, 15.)

that he is not afforded the same access to certain drafting tools and photocopying services as inmates in WCI's general population. (Dkt. #13 at 9.) However, he does not also allege, nor can the court reasonably infer, that he "has been intentionally treated differently from others *similarly situated*," or, in other words, that he has been intentionally singled out from other RHU inmates. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (emphasis added).

### C. Meaningful Access to the Courts Claim

Finally, plaintiff cannot proceed on an access to courts claim either, at least on his current allegations. The Constitution guarantees prisoners a right of meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). But because that right is to access *the courts* rather than legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). To make this showing, a prisoner's complaint must "spell out, in minimal detail, the connection between the alleged [deprivation] and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Under this standard, plaintiff's current allegations do not state a claim for denial of access to the courts. The complaint documents in detail that certain defendants have not provided plaintiff with copies of his Word documents that he claims to need to maintain his various pending legal matters in state and federal court. However, the complaint does not provide any detail regarding what information from these documents would help him

9

advance any of his pending cases beyond that they contain "details/facts and law," much less the arguments, legal theories or claims of error he is pursuing. For example, plaintiff was apparently able to litigate his sentence credit and sentence modification motions in Wisconsin circuit court without these documents, as he did not request them until after the state court denied relief, and does not articulate what information in them would have saved this legal challenge and is necessary to advance his pending appeal nor the arguments he made in support of his claims. It would therefore be unreasonable to infer on the facts as currently alleged that defendants' alleged conduct is actually impeding plaintiff from pursuing a potentially meritorious claim or defense in any of his pending cases, however much the lack of copies of these documents is making their pursuit more difficult.

As for plaintiff's general challenge to the decision to provide him with a pencil or crayon instead of a computer or typewriter, the Supreme Court has held that providing "alternative means" to ensure meaningful access to the courts does not violate the Constitution. *Lewis,* 518 U.S. at 351 (quoting *Bounds,* 430 U.S. at 830); *see also McNeal v. Weichbrod*, No. 13-CV-419-WMC, 2014 WL 6435088, at *3 (W.D. Wis. Nov. 14, 2014) (county jail inmate's challenge to the decision to provide him with pen and ink instead of a computer or typewriter insufficient to state a claim of denial of access to courts); *Magi v. Thompson,* No. 00-C-479-C, 2000 WL 34230096, at *8 (W.D. Wis. Aug. 9, 2000) ("[A]ccess to the courts does not include a federally protected right to use a typewriter. . . .Inmates are not prejudiced by the filing of handwritten documents.") (citations omitted). Although plaintiff claims he must file a typed brief specifically to advance his pending state court appeal, he acknowledges that he has access to law library

10

computer stations with Microsoft Word installed but does not clarify why this access is insufficient. (Dkt. #13 at 11.)  Even if he cannot type his brief, plaintiff does not indicate that he unsuccessfully attempted to file a nonconforming brief in the Wisconsin Court of Appeals.  That court considered plaintiff's handwritten extension motion and motion for equitable relief (*see* dkt. ##2-6, 2-8), undermining his claim that it will only consider a typed brief, even in cases involving a *pro se* litigant.  *Cf., e.g.*, *State v. Gant*, 2014 WI App 110, ¶ 2, 357 Wis. 2d 721, 855 N.W.2d 903 (Table) (declining to strike the *pro se* appellant's handwritten appellate brief); *State v. Critton*, 2013 WI App 84, ¶ 20, 348 Wis. 2d 761, 833 N.W.2d 872 (Table) (addressing the merits of the *pro se* appellant's handwritten brief); *Murray v. Jubelier*, 2011 WI App 155, ¶ 1, 337 Wis. 2d 738, 807 N.W.2d 34 (Table) (noting that the *pro se* appellant's brief is not compliant with Wis. Stat. § 809.19 but addressing the merits).  Accordingly, it would be unreasonable to conclude based on the current allegations that plaintiff is unable to advance his state court appeal, or any of his legal challenges, without a typewriter or Microsoft Word.

That said, plaintiff may have inadvertently omitted factual allegations relevant to this claim that would cure the deficiencies noted above.  Accordingly, within 21 days of the date of this order, plaintiff may file an amended complaint providing more details about the alleged denial of access to the courts, should he have a good faith basis to do so.  The court will then promptly screen plaintiff's proposed amended pleading pursuant to 28 U.S.C. § 1915A.  Otherwise, this entire case will be dismissed.[9]

---

[9] Given that plaintiff's complaint does not contain sufficient facts to state a violation of his constitutional rights or his rights under the ADA and the Rehabilitation Act, the court will deny his related motion for injunctive relief.  (Dkt. #6.)

ORDER

IT IS ORDERED that:

1) Plaintiff Jeremy T. Greene's motion to clarify and strike (dkt. #12) is GRANTED.

2) Plaintiff's complaint DISMISSED without prejudice for failure to meet the requirements of Federal Rule of Civil Procedure 8.

3) Plaintiff may have until **October 8, 2020, to submit an amended complaint addressing the deficiencies outlined in this opinion. If plaintiff fails to respond by that deadline, then this case will be dismissed with prejudice for failure to state a claim upon which relief can be granted.**

4) Plaintiff's motion for preliminary injunctive relief (dkt. #6) is DENIED.

Entered this 17th day of September, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge