IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEREMY T. GREENE,

                  Plaintiff,               OPINION AND ORDER

    v.

                                      20-cv-119-wmc

KEVIN A. CARR, CINDY O'DONNELL,
BRAD HOMPE, BRIAN FOSTER, CAPT. TRITT,
ANGELIA KROLL, T. MOON, BRETT HELMER,
NEVIN WEBSTER, CATHERINE BROADBENT,
NANCY SALMON, and WISCONSIN DEPARTMENT
OF CORRECTIONS,[1]

                  Defendants.

*Pro se* plaintiff Jeremey T. Greene, who is currently incarcerated at Waupun Correctional Institution ("Waupun"), filed this proposed civil action claiming that he was being denied access to certain legal materials and drafting tools. On September 17, 2020, this court dismissed Greene's initial complaint for failure to state a claim, but gave him an opportunity to file an amended complaint. (Dkt. #16.) Although Greene took advantage of that opportunity, his proposed amended complaint (dkt. #21) unfortunately does *not* cure the deficiencies noted in the court's prior order and cannot be screened to go forward under 28 U.S.C. § 1915A.[2] The court must, therefore, dismiss this lawsuit for failure to state a claim upon which relief can be granted.

---

[1] The proposed amended complaint clarifies that named defendant Ms. Kroll is Angelia Kroll. (Dkt. #21 at 1.) The court will amend the caption accordingly.

[2] Greene has also filed two motions to correct the second attachment to his proposed amended complaint. (Dkt. ##22, 23.) Granting these motions, the court will consider the substitute attachment for purposes of screening.

# ALLEGATIONS OF FACT[3]

As in his initial complaint, Greene alleges that before he was transferred to Waupun in March of 2019, he was incarcerated at the Wisconsin Secure Program Facility ("WSPF"), where he used Microsoft Word ("Word") via his Education Network ("EdNet") account to draft notes and legal documents related to his ongoing lawsuits, including a collateral attack on his Wisconsin criminal conviction. Greene describes these materials as including unspecified "factual details," "caselaw," "legal guides," and "standards of review and areas of law" related to sentence credit and modification. (Dkt. #21 at 5-6, 10.)

When Greene arrived at Waupun, however, he was placed on temporary lockup status in the restrictive housing unit ("RHU") that denies prisoners access to programs through EdNet, even though there are three electronic institution law library computer stations in the RHU with Word software already installed. As a result, unlike prisoners in Waupun's general population, Greene alleges that those in the RHU are limited to paper, carbon paper, envelopes, and rubber security pencils for drafting legal documents, which caused him eye strain due to his myopia, as well as hand, neck and back pain from the pressure required to make legible copies. Greene complained to Warden Brian Foster about the pencil-only policy in particular -- describing it as "an impediment due to [the many] legal actions" he was pursuing at the time -- but allegedly received no response. (Dkt. #21 at 8.)

---

[3] In addressing any pro se litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

In early May of 2019, Greene moved from the RHU to a transitional cell block, then spent 30 days on cell confinement for disruptive conduct. While on this status, Greene alleges that he could not go to the law library and did not have access to "needed legal information due to [his] impromptu transfer and [Waupun] policies and practices governing legal materials access for prisoners" on restrictive or punitive statuses. (Dkt. #21 at 8.) Using the legal materials he did have in his possession at that time (and his typewriter, which had been returned to him when he left the RHU), Greene prepared and filed two motions in Wisconsin circuit court; one was a motion for 147 days of sentence credit; the other requested sentence modification based on nine, allegedly new factors and six grounds for sentence adjustment. The circuit court denied the motion for sentence credit because neither the judgment of conviction nor the sentencing transcript indicated that Greene's criminal sentence was to run concurrently with any other sentence. (Dkt. #22 at 2.) That court similarly denied Greene's motion for reconsideration of that decision, arguing that sentences are presumed to run concurrently where the judgment and transcript are silent on the question. The circuit court also denied the motion for sentence modification or adjustment because Greene had not (1) articulated a sufficient factual basis, (2) identified a new factor, or (3) provided a basis for adjustment or materials that supported his requested relief.

On June 27, 2019, Greene was returned to the RHU due to self-harming concerns, and once again had no access to his typewriter after receiving the circuit court's rulings denying his two motions or when he appealed from those rulings to the state appellate court in early September of 2019. Moreover, to pursue his appeal, Greene sought copies

3

of the Word documents, caselaw, and legal guides that he had allegedly saved to his EdNet account while at WSPF. As detailed in the court's original order of dismissal, Greene unsuccessfully requested copies of these materials beginning in October 2019, including from Waupun Law Librarian Nevin Webster, Education Director Brett Helmer, WSPF Law Librarian Cathy Broadbent, and Records Supervisor Nancy Salmon. (Dkt. #16 at 2-3.) According to these defendants, Greene's WSPF materials could not be accessed from Waupun, and his old EdNet account had been disabled after transfer. Inmate Complaint Examiner T. Moon reviewed and rejected Greene's inmate complaint about these legal materials, a ruling that Warden Brian Foster affirmed over Greene's assertion that he needed the materials to pursue "multiple legal matters." (Dkt. #21 at 11.)

Once back in the RHU, Greene also renewed the challenge to his restricted access to drafting tools. To that end, Greene unsuccessfully sought access to a typewriter or Word from RHU Security Supervisor Captain Tritt and Program Assistant Angelia Kroll. (Dkt. #16 at 4-5.) When his state court appellate brief was due, Greene also allegedly explained his need to submit a typewritten brief in order to comply with the form requirements of Wis. Stat. § 809.19(8)(b).[4] Kroll responded that while typewriters and computer disks were not allowed in the RHU, Greene had access to legal research software and materials in the "legal rec rooms."

Still, Greene filed an inmate complaint alleging inadequate drafting tools, which

---

[4] The Wisconsin Rules of Civil Appellate Procedure indicate that appellate briefs are to be "[p]roduced by a duplicating or copying process that produces a clear, black image of the original on white paper" and "using either a monospaced font or a proportional serif font." Wis. Stat. § (Rule) 809.19(8)(b)(1). The appellate rules also impose page number and word limits. Wis. Stat. § (Rule) 809.19(8)(c).

4

Complaint Examiner Moon allegedly recommended dismissing because the pencils complied with the Wisconsin Department of Corrections' ("DOC") policy, none of Greene's court filings had been rejected as illegible, *and* Captain Tritt allowed RHU inmates with court deadlines the use of black crayon. After Warden Foster agreed with Moon's recommendation, Greene appealed, DOC Complaint Examiner Brad Hompe recommended dismissal, and DOC Deputy Secretary Cindy O'Donnell dismissed Greene's appeal on January 23, 2020.

Greene alleges that he next filed multiple extension motions in the Wisconsin Court of Appeals, which granted him additional time, but declined his request to order the DOC to provide him access to his typewriter and "other materials." (Dkt. #2-8.) Ultimately, Greene alleges that he was able to submit a handwritten appellant's brief in September of 2020.

OPINION

Plaintiff seeks leave to proceed against the same defendants named in his initial complaint on claims of Fourteenth Amendment equal protection, violations of the Americans with Disabilities and Rehabilitation Acts, and denial of access to courts.

I. **Equal Protection Claim**

In its prior order, the court construed plaintiff's initial complaint as alleging a class-of-one equal protection claim and denied him leave to proceed on that theory. (Dkt. #16 at 10-11.) Plaintiff now alleges that he should be allowed to proceed on an equal protection claim based on the allegation that RHU inmates are generally not allowed access to a

5

typewriter or to Word, while inmates in the general population can use both drafting tools. (Dkt. #21 at 17-18.) To establish a prima facie case of discrimination under the Equal Protection Clause of the Fourteenth Amendment, however, a plaintiff must at least allege that he was: (1) "a member of a protected class"; (2) "otherwise similarly situated to members of the unprotected class"; and (3) "treated differently from members of the unprotected class." *Brown v Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Plaintiff has not alleged that he is a member of a protected class, such as race or religion, nor that he was treated differently from members of the unprotected class. *See Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003) ("Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens").

Rather, plaintiff alleges that all RHU inmates are treated similarly with respect to drafting tool access, while those in the general population have fewer restrictions. To the extent this is an assertion of disparate impact and not intent, "disparate impacts do not violate the Equal Protection Clause." *Voss v. Carr*, No. 19-cv-790-jdp, 2020 WL 1234433, at *8 (W.D. Wis. Mar. 13, 2020); *see also Washington v. Davis*, 426 U.S. 229, 239 (1977) ("But our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional [s]olely because it has a racially disproportionate impact"). Regardless, "[u]nequal treatment among inmates . . . is justified if it bears a rational relation to legitimate penal interest." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988); *see also May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000) ("In the prison context, the Equal Protection Clause of the Fourteenth

6

Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest"). Indeed, broad prison classifications "are presumed to be rational and will be upheld if any justification for them can be conceived." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

Here, plaintiff does not offer even a conclusory assertion that the differential treatment he alleges is unrelated to a legitimate penological interest. Moreover, one can readily conceive of reasonable penological justifications for denying inmates' access to these and other items while on restriction status, both punitive and safety related. Accordingly, plaintiff's allegations still do not state a claim under the Equal Protection Clause.

## II. ADA and Rehabilitation Act

Plaintiff also alleges that Waupun Warden Foster violated his rights under the ADA and the Rehabilitation Act by declining to accommodate his request for pen inserts and Word access. In addition to the limits of his use of safety pencils, plaintiff further asserts that the alternative black crayon option is not consistently available to him, as well as an inadequate drafting tool. The ADA prohibits discrimination against qualified persons with disabilities. To establish a violation of Title II of the ADA, a plaintiff "must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)). The Rehabilitation Act is substantially the same, except that a claim under § 504 of the Act has four elements: (1)

an individual with a disability; (2) who was otherwise qualified to participate; (3) but who was denied access solely by reason of disability; (4) in a program or activity receiving federal financial assistance. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012).

Greene does not affirmatively allege that his eye strain and hand, neck and back pain amount to an actual disability under either Act, nor is he likely to be able to make such a showing. A "disabled" individual for purposes of the ADA has (1) a physical or mental impairment that substantially limits a major life activity, (2) a record of such impairment, or (3) is regarded as having such impairment. *See* 42 U.S.C. § 12102(1); *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (plaintiff must show that she falls within the ADA's statutory definition of "disabled" to establish a *prima facie* case under the Rehabilitation Act). Major life activities include breathing, walking, talking, hearing, seeing, sleeping, caring for oneself, performing manual tasks, and working. 42 U.S.C. § 12102(2). Plaintiff does not allege that either his eye strain or his localized pain affects him beyond drafting extensive legal documents.[5]

Moreover, even if plaintiff's allegations implicated a major life activity, there is no suggestion that his symptoms have created a *barrier* to his drafting and filing legal documents -- or even *severely restricted* his ability to do so -- only that using a safety pencil at times makes it physically uncomfortable for him to do so, such as when litigating

---

[5] In prior filings, plaintiff notes that he wears glasses to correct his myopia, and he actually provides his prescription in the proposed amended complaint. (Dkt. ##15 at 2; 21 at 7-8.) Notably, with respect to nearsightedness, a court must consider whether a plaintiff is able to correct his vision with eyeglasses or contact lenses in determining disability, 42 U.S.C. § 12101(4)(E)(ii), which appears to be the case.

multiple cases at one time. Indeed, as noted in the September 17, 2020, order, plaintiff has been able to draft and file in this court detailed, well-researched, readable court documents with the pencil, including the proposed amended complaint now under consideration, and has provided more readable versions of his filings when notified that an original scan was faint. (Dkt. #16 at 8.)[6]

Finally, plaintiff does not allege that because of a disability he has been denied access to research and drafting resources or services that other RHU inmates are permitted. Rather, being denied pen inserts and certain other drafting tools appears to be a function of being placed in the RHU. Accordingly, plaintiff still cannot proceed on this claim.

## III. Access to Courts Claim

As for his renewed access-to-courts claim, plaintiff asserts that defendants are denying him access to certain legal materials saved on his WSPF EdNet account and to the drafting tools he needs to type a brief in conformance with state appellate court rules. But providing "alternative means" to ensure meaningful access to the courts does not violate the Constitution. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (citation omitted); *see also Lehn v. Hartwig*, 13 F. App'x 389, 392 (7th Cir. 2001) (holding, in a section 1983 action, "[i]f prisoners have no constitutional right to a typewriter . . . they certainly do not have one to a computer"); *Magi v. Thompson*, No. 00-C-479-C, 2000 WL 34230096, at *8 (W.D. Wis. Aug. 9, 2000) ("[A]ccess to the courts does not include a federally protected right to use a typewriter . . . Inmates are not prejudiced by the filing of handwritten

---

[6] *See, e.g.*, *Greene v. Teslik et al.*, case no. 3:18-cv-116-wmc, dkt. ##81-83, 88-92 (W.D. Wis. 2018).

documents") (citations omitted). And as noted in the court's prior order, the right at issue is to access *the courts*, not to access legal materials or law libraries, so an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). At minimum, the plaintiff must at least allege facts showing that the alleged "blockage prevented him from litigating a nonfrivolous case." *Walters v. Edgar*, 163 F.3d 430, 433-34 (7th Cir. 1998).

In fairness, plaintiff has filled in some of the gaps from his initial complaint. For example, he has alleged more detail regarding his claims and legal theories pursued in state court, and the types of information he had saved to his WSPF EdNet account. However, as for drafting tool access, plaintiff's problem remains that he has not alleged an actual injury. *See Casey*, 518 U.S. at 349 (to state an access to courts claim, the plaintiff must allege facts from which an inference can be drawn of actual injury). To the contrary, he alleges that he was granted several extensions by the state appellate court while seeking access to Word or a typewriter, and he now asserts that he *was* permitted to file a handwritten appellant's brief in that court. Accordingly, the court has no reasonable basis to infer that a lack of access to his typewriter or Word impeded plaintiff from pursuing his state court appeal.[7] *See McNeal v. Weichbrod*, No. 13-cv-419-wmc, 2014 WL 6435088, at

---

[7] The court's review of the publicly available information on the Wisconsin Supreme Court and Court of Appeals Access system ("WSCCA") for plaintiff's state court appeal confirms that plaintiff filed a 103-page handwritten brief on September 16, 2020. *State v. Jeremy T. Greene*, appeal no. 2019AP1668-CR, available at https://wscca.wicourts.gov/. WSCCA also indicates that the state successfully moved to strike the brief, and that plaintiff filed a new appellant's brief on January 13, 2021, to which the state has responded. In reliance on Wis. Stat. § (Rule) 809.19(8)(c), the basis of the state's motion to strike was that plaintiff's brief greatly exceeded the allowable length and

*3 (W.D. Wis. Nov. 14, 2014) (dismissing at the screening stage plaintiff's claim that defendant denied him access to the courts by failing to provide a computer or typewriter and case law printouts).

Nor can the court reasonably draw an inference that defendants' alleged inability or unwillingness to provide plaintiff access to his WSPF EdNet account is actually *impeding* plaintiff from pursuing his state court case, no matter how much the lack of copies of these documents may make that pursuit more challenging. Plaintiff's complaint indicates that he was able to present cogent arguments to the state circuit court in support of his motions for sentence credit and sentence modification or adjustment. (Dkt. #21 at 8-9.) That plaintiff did not prevail on his motions does not mean that he lacked access. Although the state circuit court denied plaintiff's motions, in part because of an insufficient factual basis, plaintiff acknowledges having some legal materials at his disposal when preparing those motions, and he does *not* specify what this other "needed legal information" amounted to, beyond a general reference to "factual details," "supportive law," or "caselaw and legal guides." (Dkt. #21 at 8, 10.) Even more to the point, plaintiff alleges that he did not even *request* the documents he now wants *until months after* the circuit court motions were denied.

Accordingly, the named defendants' alleged conduct with respect to plaintiff's requests for EdNet access appears to have neither impeded nor prejudiced his state circuit

---

word count. Although the state also noted that portions of plaintiff's brief were "nearly illegible" in the photocopy and scan made available to it, the state did not ask that plaintiff type his new brief. As noted, when this court has similarly notified plaintiff that a scan of one of his handwritten filings was faint, plaintiff has been able to resolve the situation by providing a more legible version. Accordingly, the court cannot infer that an inability to type his appellant's brief, or any other state court filings, is impeding plaintiff from pursuing his appeal.

court litigation. Indeed, to the extent plaintiff's claim hinges on his allegation that he needed or needs his WSPF materials to advance his state court appeal, he acknowledges drafting and filing a substantial appellate brief, and he does not allege that this brief is potentially deficient because he lacked specific materials only available via his WSPF EdNet account. For these reasons, plaintiff cannot proceed on this claim either and it must also be dismissed.

ORDER

IT IS ORDERED that:

1) Plaintiff Jeremy T. Greene's amended complaint (dkt. #21) is DISMISSED with prejudice for his failure to state a claim upon which relief can be granted.

2) Because this case is being dismissed for one of the reasons listed in 28 U.S.C. § 1915(g), the clerk of court is directed to record a "strike." If Greene receives three "strikes" under § 1915(g), he will not be able to proceed in future cases without prepaying the full filing fee unless he is in imminent danger of serious physical injury.

Entered this 28th day of June, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge